## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDERSON BASTONE, as the Administrator of the Estate of CHAZ BASTONE,** | **CIVIL ACTION – LAW** |
| **PLAINTIFF,** | **JURY TRIAL DEMANDED** |
| **v.** | **NO.:** |
| **GOLF TRANSPORTATION, INC,** | |
| **OCONNOR TRUCKING, INC.,** | |
| **JP LOGISTICS, INC.,** | |
| **UNITED NATURAL FOODS INC.,** | |
| **UNFI TRANSPORT LLC,** | |
| **and** | |
| **COYOTE LOGISTICS, LLC** | |
| **DEFENDANTS.** | |

## **COMPLAINT**

AND NOW COMES the Plaintiff, Anderson Bastone Individually and as Administrator of the Estate of Chaz Bastone, by and through their undersigned legal counsel, Fellerman & Ciarimboli Law, P.C., to hereby complain against the

1

Defendants, Golf Transportation Inc., O'Connor Trucking, Inc., JP Logistics, Inc., United Natural Foods Inc. UNFI Transport LLC, and Coyote Logistics, LLC. (collectively "Defendants"), as follows:

## PARTIES

1.    Plaintiff, Anderson Bastone ("Mr. Bastone") is a competent adult individual who resides at 220 West Branch Avenue, Apartment 217, Pine Hill, NJ 08021.

2.    At all relevant times hereto, Mr. Bastone was the Administrator of the Estate of Chaz Bastone, deceased ("Decedent").

3.    Chaz Bastone, deceased, was a competent adult individual who resided at 221 Maple Street, Dickson City, Lackawanna County, Pennsylvania 18519.

4.    Defendant, Golf Transportation, Inc. ("Golf Transportation") is an Illinois Corporation with a principal place of business at 51 West Conti Parkway, Apartment B2 Elmwood Park, IL 60707.

5.    Golf Transportation's USDOT number is listed as 2945959.

6.    Golf Transportation's MC number is listed as MC-997153.

7.    Defendant, OConnor Trucking, Inc. ("OConnor") is an Illinois Corporation with a principal place of business located at 3306 Daniel S. Court., Arlington Heights, Illinois 60004.

8.    OConnor's USDOT number is listed as 2266763.

9.     OConnor's MC number is listed as MC-773863.

10.    Defendant, JP Logistics, Inc. ("JP Logistics") is an Illinois corporation with a principal place of business located at 671 Executive Drive, Suite C, Willowbrook, Illinois 60527.

11.    JP Logistics' USDOT number is listed as 2311762.

12.    JP Logistics' MC number is listed as MC-789206.

13.    JP Logistics was the owner of the Wabash National semi-trailer being hauled on the night of the incident.

14.    Defendant, United Natural Foods Inc. ("UNFI") is a Delaware corporation with its headquarters located at 313 Iron Horse Way, Providence, Rhode Island, 02908.

15.    Defendant, UNFI Transport LLC ("UNFI Transport") is a limited liability company with its principal place of business located at 313 Iron Horse Way, Providence, Rhode Island, 02908.

16.    UNFI Transport's USDOT number is listed as 179097.

17.    UNFI Transport's MC number is listed as MC-308546.

18.    Defendant, Coyote Logistics, LLC ("Coyote") is an Illinois limited liability company with a principal place of business located at 2445 West Diversey Avenue, 3rd Floor, Chicago, IL 60647.

19.    Coyote's USDOT number is listed as 2236410.

20.     Coyote's MC number is listed as MC-561135.

21.     When referenced collectively, Golf Transportation, OConnor, JP Logistics, UNFI, UNFI Transport, and Coyote will be referred to as "Defendants" throughout this Complaint.

22.     At all times relevant hereto, Defendants were or should have been authorized interstate motor carriers authorized to transport goods in interstate commerce and in the Commonwealth of Pennsylvania pursuant to one or more permits issued by the Interstate Commerce Commission and/or by the United States Department of Transportation ("USDOT").

23.     Accordingly, Defendants were subject to all state and federal laws, statutes, regulations, and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation, Pennsylvania Statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations ("FMCSR") set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

24.     Each Defendant, in order to obtain a DOT number was required to submit an OP-1 form containing a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration ("FMCSA") that they have access to and are familiar with all applicable USDOT regulations relating to the safe operation of

4

commercial motor vehicles and that Defendants will comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States.

25. More specifically, each Form OP-1 submitted contained a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that, at a minimum, Defendants:

    a. had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

    b. can produce a copy of the FMCSRs;

    c. had and will have in place a driver safety training/orientation program;

    d. had and will have prepared and maintain an accident register;

    e. is familiar with D.O.T. regulations governing driver qualifications and had and will have in place a system for overseeing driver qualifications requirements;

    f. had and will have in place policies and procedures consistent with D.O.T. regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance;

    g. is familiar with, and had and will have a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and

    h. must comply with all pertinent Federal, State, local and tribunal statutory and regulatory requirements when operating within the United States.

26.    In order to obtain a DOT number, the Defendants and/or their authorized representatives swore under the penalty of perjury to comply with the above "Safety Certifications."

27.    Greg Leksowski ("Mr. Leksowski") is, based upon information and belief, a competent adult individual who resides at 4615 North Lost Horizon Drive, Tucson, Arizona 85745.

28.    At all times relevant hereto, Mr. Leksowski was a class A licensed commercial motor vehicle operator driving a 2000 Volvo tractor trailer with VIN number 4V4ND3JJ7YN243732 (hereinafter "Volvo") and a Wabash National (hereinafter "Wabash") trailer owned, leased, assigned, and/or operated by Defendants.

29.    Accordingly, Mr. Leksowski was subject to all state and federal laws, statutes, regulations, and industry standards governing the safe maintenance and operation of commercial motor vehicles and trailers including, without limitation, Pennsylvania Statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

30.    At all times relevant hereto, the Volvo and Wabash were owned, leased, assigned, and/or operated by Defendants and was being operated and/or controlled

by Mr. Leksowski with the consent of the Defendants and for the financial benefit of Defendants.

31.    At all times relevant hereto, Mr. Leksowski was employed and/or contracted to perform services for and was operating the Volvo hauling the Wabash for Defendants under the Defendants' USDOT operating authority and was subject to their supervision, control or right to control, such that Defendants should be considered his actual and statutory employer and therefore vicariously liable for Mr. Leksowski's negligence and recklessness.

32.    At all relevant times hereto, Mr. Leksowski was the agent, servant, workman, and/or employee of Defendants and was acting in the course and scope of his employment, under the direction, control, and authority of Defendants and was the permissive user on behalf of all Defendants of the tractor and trailer involved in the crash.

33.    At all relevant times hereto, Mr. Leksowksi was driving a Volvo and hauling a Wabash owned, leased, assigned and/or operated by Defendants.

34.    At all relevant times hereto, Defendants acted as a single entity and operated and conducted business as a single entity for transporting goods in interstate commerce.

35.     At all relevant times hereto, Defendants were engaged in the joint undertaking of a particular transaction for mutual profit, mutual control, mutual contribution and this joint undertaking was memorialized in a contract.

36.     At all relevant times hereto, Defendants acted as a joint venture for transporting goods in interstate commerce.

37.     Upon information and belief, UNFI and UNFI Transport either subsumed Defendants Golf Transportation, OConnor, JP Logistics, and/or Coyote and their fleet of commercial motor vehicles to utilize as their own, and/or provided substantial assistance/investment to Golf Transportation, OConnor, JP Logistics, and/or Coyote such that their fleet of commercial motor vehicles became the commercial motor vehicle fleet of UNFI and UNFI Transport.

38.     At all relevant times hereto, UNFI and UNFI Transport contracted with Defendants Golf Transportation, OConnor, JP Logistics, and/or Coyote to move the load being transported by Mr. Leksowski.

39.     Accordingly, Defendants are personally liable, jointly and severally, in partnership, joint venture, or sole proprietorship for the tractor-trailer crash that caused Plaintiff's Decedent, Chaz Bastone, to suffer catastrophic and fatal injuries.

40.     Defendants acted in a manner that either alone or combined, directly and proximately caused the crash and the resulting injuries and death suffered by Plaintiff's Decedent.

41.     At all relevant times, the Defendants were liable for the actions and/or inactions of Mr. Leksowski as though the actions and/or inactions were performed by the entities themselves.

42.     At all relevant times, the Federal Motor Carrier Safety Regulations apply hereto, pursuant to 67 Pa. Code §231, *et seq*.

43.     At all relevant times, Plaintiff's Decedent acted with due care and in no way caused or contributed to the crash that forms the basis of this lawsuit.

44.     Plaintiff seeks damages for all harms and losses permissible under Pennsylvania law, including, but not limited to, funeral and burial expenses, costs of estate administration, profound psychological and emotional loss, conscious pain and suffering, and such other injuries, damages, and losses as described more fully and compensable at law under the Wrongful Death Act and Survival Act, and the decisional law of this Commonwealth interpreting those Acts, caused by the negligence and recklessness of the Defendants.

## JURISDICTION AND VENUE

45.     This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because (a) there is complete diversity of citizenship between Plaintiff and Defendants; and (b) the matter in controversy exceeds the jurisdictional limit.

46.     Venue is appropriate under 28 U.S.C. §1391(b)(2).

## OPERATIVE FACTS COMMON TO ALL COUNTS

47.     The preceding paragraphs are incorporated herein as though fully set forth below.

48.     On October 7, 2020, at or around 11:18 p.m., Mr. Leksowski was operating the Volvo and hauling the Wabash owned, leased, and/or assigned by Defendants.

49.     On October 7, 2020, at or around 11:18 p.m., Plaintiff's Decedent was a passenger in a 2003 Chevrolet Cavalier and traveling Northbound on Interstate 81 ("I-81") in Moosic Borough, Lackawanna County.

50.     At this date and time, Mr. Leksowski was operating the Volvo Northbound on the same stretch of I-81, Lackawanna County, Pennsylvania.

51.     At or around the aforementioned time and date, Mr. Leksowski, while attempting to merge into the right travel lane of I-81, violently struck the Chevrolet carrying Plaintiff's Decedent.

52.     The force of the impact caused the Chevrolet to become lodged under the trailer of the Volvo operated by Mr. Leksowski.

53.     Due to the sheer velocity of the impact of the Volvo driven by Mr. Leksowski, Chaz Bastone was tragically killed.

54.    At all relevant times hereto, Mr. Leksowski exhibited a conscious disregard for the health and safety of the motoring public by operating the Volvo at dangerously high speeds for the conditions.

55.    At all relevant times hereto, Mr. Leksowski operated the Volvo in such a reckless, careless, and negligent manner, that he did not notice he was merging into the vehicle carrying Chaz Bastone in the moments leading up to the crash.

56.    As a result of the crash, as well as the negligence, carelessness, and recklessness of Defendants, Chaz Bastone, the Estate of Chaz Bastone, Plaintiff Anderson Bastone, and the Decedent's family, have suffered and will continue to suffer substantial economic and non-economic injuries, damages and losses including, but not limited to:

a.    Funeral and burial expenses;

b.    Costs of Estate administration;

c.    Profound psychological and emotional loss;

d.    Pre-death fright and fear of impending death;

e.    Conscious pain and suffering;

f.    Loss of the comfort, care, and society of Chaz Bastone; and

g.    Such other injuries, damages and losses described more fully herein and compensable at law under the Wrongful Death Act and the Survival Act, and the decisional law of this Commonwealth interpreting those Acts.

11

55.     At all relevant times hereto, Plaintiff acted in a safe, prudent, and reasonable manner and in no way contributed to the injuries or damages outlined herein.

56.     Upon information and belief, at the time of the crash, Mr. Leksowski was in violation of the FMCSR hours of service limits and consciously chose to operate the Volvo in a fatigued condition.

57.     Moreover, Defendants participated in, knew, or should have known that Mr. Leksowski was operating over hours, driving while fatigued and otherwise operating the Volvo in an unsafe, dangerous and reckless condition in violation of the FMCSR and Pennsylvania law.

58.     At all relevant times, upon information and belief, Mr. Leksowski's fatigued condition impaired his judgment, perception, and reaction to such an extent that he inexplicably merged the Volvo into Plaintiff's Decedent without braking.

59.     At all relevant times, upon information and belief, Mr. Leksowski drove in a distracted manner such that he failed to maintain his lane of travel prior to impacting the Chevrolet driven by Plaintiff's Decedent.

60.     At all relevant times, Defendants knew of Mr. Leksowski's reckless and dangerous driving record and chose to hire him anyway.

61.     This information was known and/or readily available to Defendants, all before the Crash that fatally killed Chaz Bastone.

62.     At all relevant times, upon information and belief, Defendants knew or should have known that Mr. Leksowski had a propensity for violations of unsafe driving and speeding.

63.     At all relevant times, the FMCSA as part of its Safety Management System maintained a user-friendly website that was available to the public that tracks the registration, safety and compliance of all motor carriers that have a USDOT number, like Golf Transportation, OConnor, JP Logistics,UNFI Transport, and Coyote. The online FMCSA information also provided historical information and easy to understand explanations of how to use the site and what each category of information and score means.  The FMCSA's online public information also listed the crashes and safety violations for the last 24 months.

64.     Defendants were aware of the FMCSA website.

65.     Moreover, despite Mr. Leksowski's deplorable safety record, incompetence, and dangerous behavior, Defendants negligently, recklessly and with conscious disregard for the safety of the motoring public operated, selected, hired, retained, and/or assigned him to deliver goods to its customers using tractors and trailers.

66.     At all relevant times, Defendants exercised complete control over the dispatching of the Volvo driven by Mr. Leksowski, as well as the Wabash being hauled at the time of the crash.

67.     At all relevant times, Defendants exercised complete control over the routing of the Volvo driven by Mr. Leksowski at the time of the crash.

68.     At all relevant times, UNFI and/or UNFI Transport had the contractual right to and/or exercised control over the transportation of the load in question to such a degree that Mr. Leksowski, Golf Transportation, OConnor, JP Logistics, and Coyote should be considered agents of UNFI and UNFI Transport.

## COUNT I

## WRONGFUL DEATH

## ANDERSON BASTONE, AS THE ADMINISTRATOR OF THE ESTATE OF CHAZ BASTONE v. ALL DEFENDANTS

69.     The preceding paragraphs are incorporated herein as though fully set forth below.

70.     Plaintiff, Anderson Bastone, as Administrator of the Estate of Chaz Bastone, deceased, brings this Wrongful Death Action on behalf of the Estate of Chaz Bastone under and by virtue of the Wrongful Death Act, 42 Pa. C.S.A. §8301, the applicable Rules of Civil Procedure and decisional law interpreting this Act.

14

71.     Under the Wrongful Death Act, Chaz Bastone, deceased, left surviving his sole heir-at-law,

     a.  Anderson Bastone (Father) who resides at 220 West Branch Avenue, Apt. 217, Pine Hill, NJ 08021.

72.     As a result of the negligent acts and omissions of Defendants, as described more fully herein, Plaintiffs' Decedent, Chaz Bastone, suffered catastrophic, permanent and fatal injuries and death resulting in the entitlement to damages by the aforementioned beneficiaries under the Wrongful Death Act.

73.     Plaintiff, Anderson Bastone, Administrator of the Estate of Chaz Bastone, deceased, hereby claim the full measure of damages recoverable under and by virtue of the Wrongful Death Act and the decisional law interpreting the Act.

74.     Plaintiff, Anderson Bastone, Administrator of the Estate of Chaz Bastone, deceased, claims damages for the pecuniary losses suffered by reason of the death of Chaz Bastone, including but not limited to, damages for all medical expenses, funeral and burial expenses, and the costs of estate administration necessitated by reason of the injuries which caused Chaz Bastone's death.

75.     Plaintiff Anderson Bastone, as Administrator of the Estate of Chaz Bastone, deceased, claims damages for the loss of earnings, maintenance, support, comfort, care, society and/or other losses as specifically recognized under the

Wrongful Death Act and its Pennsylvania case law progeny, including <u>Rettger v.</u> <u>UPMC Shadyside</u>, 2010 PA Super 41, P32, 991 A.2d 915, 933 (Pa. Super. 2010), including profound psychological and emotional loss, which they would have received from the decedent had her death not occurred.

76.     Plaintiff, Anderson Bastone, as Administrator of the Estate of Chaz Bastone, deceased, claim the loss of the pecuniary value of the services which the decedent could have been expected to provide to the Wrongful Death beneficiaries during her lifetime had her death not occurred.

**WHEREFORE**, Plaintiff, Anderson Bastone, Administrator of the Estate of Chaz Bastone, hereby seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.

**COUNT II**

**SURVIVAL ACTION**

**<u>ANDERSON BASTONE, AS THE ADMINISTRATOR OF THE ESTATE OF CHAZ BASTONE  v. ALL DEFENDANTS</u>**

77.     The preceding paragraphs are incorporated herein as though fully set forth below.

78.     Plaintiff, Anderson Bastone, as the Administrator of the Estate of Chaz Bastone, brings this Survival Action on behalf of Ms. Lee under and by

virtue of the Survival Act, 42 Pa. C.S.A. §8302, the applicable Rules of Civil Procedure and decisional law interpreting this Act.

79.     As a result of the negligent acts and omissions of Defendants, as described more fully herein, Plaintiff's Decedent, Chaz Bastone suffered catastrophic, permanent and fatal injuries and death resulting in the entitlement to damages by the Estate of Chaz Bastone under the Survival Act.

80.     Plaintiff, Anderson Bastone, as the Administrator of the Estate of Chaz Bastone, deceased, claims the full measure of damages recoverable under and by virtue of the Survival Act and the decisional law interpreting the Act.

81.     On behalf of Decedent's Estate, Plaintiff claims damages for all economic losses to Chaz Bastone's Estate, as specifically recognized under the Survival Act and its Pennsylvania case law progeny, including the decedent's total estimated future earning capacity, less his personal maintenance costs.

82.     On behalf of Decedent's estate, Plaintiff claims damages for the Decedent's physical discomfort, pain and suffering, loss of enjoyment of life and life's pleasures, and all other damages and losses recoverable specifically under the Survival Act and its Pennsylvania case law progeny interpreting the Act.

**WHEREFORE**, Plaintiff, Anderson Bastone, Administrator of the Estate of Chaz Bastone, hereby seeks all damages allowed under the laws of the

Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.

## COUNT III

## VICARIOUS LIABLITY

## ANDERSON BASTONE, AS THE ADMINISTRATOR OF THE ESTATE OF CHAZ BASTONE v. ALL DEFENDANTS as being vicariously liable for GREGORY LEKSOWSKI

83.     The preceding paragraphs are incorporated herein as though fully set forth below.

84.     The negligence, carelessness, and/or recklessness of Defendants, as being vicariously liable for the actions of Mr. Leksowski consisted of, but are not limited to the following:

a.   Failing to maintain proper and adequate control of his Volvo as well as the Wabash trailer;

b.   Failing to keep his eyes on the road at all times;

c.   Failing to pay proper attention while operating his Volvo on I-81;

d.   Failing to take proper precautions in the operation of his Volvo so as to avoid the collision that occurred;

e.   Operating his Volvo in a negligent, careless and reckless manner without due regard to the rights and safety of Plaintiffs;

f.   Failing to exercise due care and caution under all of the existing circumstances;

g.   Failing to have his Volvo under such control that it could be readily stopped, turned aside or the speed thereof slackened upon the appearance of danger;

h.   Failing to remain alert;

i.   Operating his Volvo in a distracted manner;

j.   Traveling at an excessive rate of speed under the circumstances;

k.   Violating the applicable rules, regulations, and laws pertaining to the safe and proper operation of motor vehicles and/or tractor trailers;

l.   Failing to operate his Volvo in accordance with the Federal Motor Carrier Safety Regulations;

m.   Failing to properly control his Volvo in light of the circumstances then and there existing, including traffic patterns existing on the roadway;

n.   Failing to make necessary and reasonable observations while operating his Volvo;

o.   Failing to timely apply his brakes;

p.   Violating FMCSA Regulation 383 dealing with required knowledge and skills;

q.   Consciously choosing to drive at an unsafe speed given the circumstances;

r.  Consciously refusing to reduce speed in response to traffic patterns then and there existing on the roadway;

s.  Consciously choosing to disregard traffic patterns then and there existing on the roadway;

t.  Consciously choosing to switch lanes with total disregard to traffic lawfully using the roadway;

u.  Failing to perform a proper pre-trip inspection;

v.  Violating both the written and unwritten policies, rules, guidelines and regulations of Defendants;

w.  Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

x.  Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

y.  Failing to ensure the parts and accessories of the Volvo were in good working order in violation of Section 392.7;

z.  Failing to properly control his Volvo unit in light of the circumstances then and there existing on the roadway;

aa. Failing to make necessary and reasonable observations while operating the Volvo;

bb. Failing to take evasive action and/or failing to take appropriate and timely evasive action to avoid the crash with Plaintiff;

cc. Violating Sections 383.110; 383.111; and 383.113 dealing with required knowledge and skill;

dd. Violating Section 395.1 with respect to hours of service of drivers;

ee. Making a conscious choice to drive in a fatigued condition knowing that driving in a fatigued condition impairs perception and judgment;

ff. Failing to adhere to the amount of driving hours limit;

gg. Causing the Crash due to being on the road more than the regulated number of hours;

hh. Operating the Volvo in an unsafe condition in violation of Section 396.7;

ii. Failing to inspect the Volvo before and during its operation in violation of Sections 396.9; 396.11; 396.13; and 396.17; and

jj. Acting with a conscious disregard for the rights and safety of others, including the Plaintiff.

85.    As a result of the above-stated acts and omissions, Plaintiff suffered such harm as been previously stated herein.

**WHEREFORE** Plaintiff, Anderson Bastone, as Administrator of the Estate of Chaz Bastone, hereby seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.

## COUNT IV

## NEGLIGENT and/or RECKLESS HIRING / SUPERVISION / RETENTION / "NEGLIGENT SELECTION" OF GREGORY LEKSOWSKI

## ANDERSON BASTONE, AS THE ADMINISTRATOR OF THE ESTATE OF CHAZ BASTONE v. ALL DEFENDANTS

90.    The preceding paragraphs are incorporated herein as though fully set forth below.

91.    The Defendants had an obligation and duty to hire, retain and supervise drivers who operate its vehicles in a safe and prudent manner.

92.    "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which involves a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." See Rest. (Second) Torts § 411.

93.    Defendants had an obligation to exercise reasonable care in selecting a competent and careful driver to move and transport the load.

94.    Plaintiff's Decedent was tragically killed as a result of the unsafe driving of Mr. Leksowski.

95.    At all relevant times, Defendants were directly liable for the negligent and reckless hiring, supervision, and retention of driver Mr. Leksowski.

96.    The negligence, carelessness, and/or recklessness of Defendants, in

the hiring, supervision and retention of Mr. Leksowski, consisted of the following:

    a.  Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Mr. Leksowski;

    b.  Failing to train and/or properly train Mr. Leksowski prior to allowing him to operate its Volvo;

    c.  Hiring and/or continuing to employ Mr. Leksowski despite the fact that it knew or should have known that his violation of the FMCSA hours of service made him unfit to safely operate a commercial vehicle;

    d.  Hiring and/or continuing to employ Mr. Leksowski despite the fact that he had a propensity for driving violations;

    e.  Hiring and/or continuing to employ Mr. Leksowski despite the fact that he had a propensity for violating the "Rules of the Road" and FMCSR;

    f.  Failing to do preventable analysis as recommended by the FMSCR;

    g.  Failing to have an appropriate disciplinary policy within the company;

    h.  Hiring and/or continuing to employ Mr. Leksowski despite the fact that it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

    i.  Permitting Mr. Leksowski to operate its Volvo when it knew or should have known that he was not properly qualified and/or trained;

j.  Allowing Mr. Leksowski to operate tractor trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, failing to use it appropriately;

w.  Failing to have policy and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383;

aa. Failing to act upon and remedy violations of FMCSA regulation 395;

bb. Failing to act upon and remedy violations of FMCSA regulation 396.7;

cc. Failing to act upon and remedy violations of FMCSA regulation 396.9;

dd. Failing to act upon and remedy violations of FMCSA regulation 396.11;

ee. Failing to act upon and remedy violations of FMCSA regulation 396.13;

ff. Failing to act upon and remedy violations of FMCSA regulation 396.17;

gg. Failing to properly ensure that the Volvo was free from oil and grease leaks in violation of FMCSA regulation 396.5;

hh. Failing to act upon and remedy known violations of industry standards;

ii. Acting in a conscious disregard for the rights and safety of Chaz Bastone;

jj. Failing to have appropriate policies and procedures with regard to hiring of drivers;

kk. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ll. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

mm. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

nn. Consciously disregarding federal and state law regarding responsibilities of motor carriers and the operation of commercial vehicles;

oo. Violating all applicable provisions of the FMCSA;

pp. Failing to suspend, discipline, or provide remedial training to Mr. Leksowski prior to the Crash despite his history of unsafe driving practices; and

qq. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring,

training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Leksowski.

98.     As a result of the above-stated acts and omissions, Plaintiff has suffered such harm as has been previously stated herein.

**WHEREFORE** Plaintiff, Anderson Bastone, as Administrator of the Estate of Chaz Bastone, hereby seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.

## COUNT V

### NEGLIGENT and/or RECKLESS HIRING / SUPERVISION / RETENTION / "NEGLIGENT SELECTION" OF GOLF TRANSPORTATION, INC. AND OCONNOR TRUCKING, INC.

### ANDERSON BASTONE, AS THE ADMINISTRATOR OF THE ESTATE OF CHAZ BASTONE v. UNITED NATURAL FOODS, INC. AND UNFI TRANSPORT LLC

99.     The preceding paragraphs are incorporated herein as though fully set forth below.

100.    Defendants UNFI and UNFI Transport are subject to liability for physical harm caused to third persons for its failure to exercise reasonable care to

select and employ competent and careful carriers to transport loads, which is an activity that involves a high risk of physical harm, unless skillfully and carefully done.

101.   "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which involves a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." See Rest. (Second) Torts § 411.

102.   UNFI and UNFI Transport had an obligation and duty to select, hire, retain and supervise carriers to transport loads in a safe manner.

103.   UNFI and UNFI Transport had an obligation and duty to exercise reasonable care in selecting a competent and careful carrier to transport loads.

104.   At all relevant times, UNFI and UNFI Transport knew or should have known that Defendant Golf Transport had an unsafe history in performing services as a motor carrier including, but not limited to:

    a. Failing to retain supporting documents in direct violation of FMCSA regulation 395.11 (c);

    b. Driving a commercial motor vehicle at an excessive rate of speed in a construction zone in violation of FMCSA regulation 392.2 SLLSWZ;

    c. Allowing a commercial motor vehicle to operated overweight in violation of FMCSA regulation 392.2;

d.  Allowing a commercial motor vehicle to be operated in a restricted lane in violation of FMCSA regulation 392.2LV;

e.  Allowing a commercial motor vehicle and driver on the roadway without proper record of duty status in violation of FMCSA regulation 395.8;

f.  Allowing a commercial motor vehicle and driver on the roadway without any record of duty status in violation of FMCSA regulation 395.8(a);

g.  Allowing a commercial motor vehicle and driver on the roadway without an up to date and current duty status record in violation of FMCSA regulation 395.8(f);

h.  Allowing a commercial motor vehicle and driver on the roadway without a record duty status in violation of FMCSA regulation 395.8(a);

i.  Allowing a commercial motor vehicle to be operated on the roadway without proof of inspection in violation of FMCSA regulation 396.17(c);

j.  Allowing a commercial motor vehicle to be operated without proper registration and/or license plate in violation of FMCSA regulation 392.2RG;

k.  Allowing a commercial motor vehicle to be operated on the roadway with inoperable required lamps in violation of FMCSA regulation 393.9; and

l.  Allowing a commercial motor vehicle to operate on the roadway with known grease and oil leaks in violation of FMCSA regulation 396.5(b).

105.  At all relevant times hereto, Golf Transport exceeded the national average for driver out of service violations by 8.66%.

106.   Additionally, at all relevant times, UNFI and UNFI Transport knew or should have known that Defendant OConnor had an unsafe history in performing services as a motor carrier including, but not limited to:

a.  Failing to retain supporting documents in direct violation of FMCSA regulation 395.11 (c);

b.  Failing to maintain inquiries into driver's driving record in driver's qualification file in direct violation of FMCSA regulation 391.51(b)(2);

c.  Consciously choosing to make fraudulent entries on annual periodic inspection form in direct violation of FMCSA regulation 390.35;

d.  Driving a commercial motor vehicle at an excessive rate of speed 6-10 miles over the posted speed limit in violation of FMCSA regulation 392.2 SLLS2;

e.  Driving a commercial motor vehicle that is equipped with inoperative brake lamps in violation of FMCSA regulation 393.9;

f.  Driving a commercial motor vehicle that is not equipped with operative turn signals in violation of FMCSA regulation 393.9;

g.  Driving a commercial motor vehicle that is not equipped with operative hub caps in violation of FMCSA regulation 396.3A1;

h.  Allowing a commercial motor vehicle to be operated with defective lighting devices or reflective material in violation of FMCSA regulation 393.11;

i.  Allowing a commercial motor vehicle to be operated with tire tread or sidewall separation in violation of FMCSA 393.75;

j.  Allowing a commercial motor vehicle to be operated with tire tread depth less than 2/32 of an inch in violation of FMCSA regulation 393.75;

k.  Allowing a commercial motor vehicle to be operated without proof of inspection in violation of FMCSA regulation 396.17;

l.  Allowing a commercial motor vehicle to be operated with clamp or roto brake out of adjustment in violation of FMCSA 393.47(e);

m.  Allowing a commercial motor vehicle equipped with an air brake system to be operated without meeting the brake adjustment requirements outlined in the FMCSA in violation of FMCSA regulation 393.53(b);

n.  Allowing a commercial motor vehicle to be operated on the roadway without proper required lamps in violation of FMCSA regulation 393.9;

o.  Allowing a commercial motor vehicle to be operated on the roadways without required warning devices in violation of FMCSA regulation 393.95(f);

p.  Allowing a commercial motor vehicle to be operated on the roadway without operable leaf springs in violation of FMCSA regulation 393.207(c);

q.  Allowing a commercial motor vehicle to be operated on the roadway without operable axle positioning in violation of FMCSA regulation 393.207(a);

r.  Allowing a commercial motor vehicle to be operated on the roadway without proper brake hoses and tubing in violation of FMCSA regulation 393.45;

s.  Allowing a commercial motor vehicle to be operated on the roadway with defective brakes in violation of FMCSA regulation 393.48(a);

t.  Allowing a commercial motor vehicle to operated on the roadways with a driver whose duty status is not current in violation of FMCSA regulation 395.8(f);

u.  Failing to have a driver retain previous seven (7) days of records pertaining to duty status in violation of FMCSA regulation 395.8(k);

v.  Failing to equip commercial motor vehicle with electronic logging devices that transfers data electronically in violation of FMCSA regulation 395.24(d);

w.  Failing to manually add shipping document in violation of FMCSA regulation 395.24(c)(2);

x.  Allowing a driver to operate a commercial motor vehicle without being able to read or speak the English language in violation of FMCSA regulation 391.11(b)(2);

y.  Allowing a commercial motor vehicle to be operated on the roadway while the electronic logging device cannot be viewed from outside the vehicle in violation of FMCSA regulation 395.20(b);

z.  Allowing a commercial motor vehicle to be operated on the roadway without proper mounting of the electronic logging device in violation of FMCSA regulation 395.22(g);

aa. Allowing a commercial motor vehicle and driver on the roadway without proper record of duty status in violation of FMCSA regulation 395.8(a)

bb. Driving a commercial motor vehicle at an excessive rate of speed while traveling through a construction zone in violation of FMCSA regulation 392.2SLLSWZ; and

cc. Making an improper turn while operating a commercial motor vehicle in violation of FMCSA regulation 392.2T.

107.  In addition, UNFI and UNFI Transport was negligent in the selection of Golf Transport and OConnor as a carrier because it knew or should have known that Golf Transport and OConnor were negligent/reckless in the following ways:

a.  Failing to adopt appropriate employee manuals and/or training procedures;

b.  Failing to enforce both written and unwritten polices of Defendants;

c.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

d.  Failing to implement and/or enforce an effective safety system;

e.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

f.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

g.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

h.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

i.  Failing to monitor and/or regulate the actions of its drivers;

j.  Failing to monitor and/or regulate the hours of its drivers;

k.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

l.  Failing to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, failing to use it appropriately;

m. Failing to have policy and mechanisms in place to address cumulative fatigue in its drivers;

n.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

o.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

p.  Failing to act upon and remedy violations of FMCSA regulation 383;

q.  Failing to act upon and remedy violations of FMCSA regulation 395;

r.  Failing to act upon and remedy violations of FMCSA regulation 396.7;

s.  Failing to act upon and remedy violations of FMCSA regulation 396.9;

t.  Failing to act upon and remedy violations of FMCSA regulation 396.11;

u.  Failing to act upon and remedy violations of FMCSA regulation 396.13;

v.  Failing to act upon and remedy violations of FMCSA regulation 396.17;

w.  Failing to act upon and remedy known violations of industry standards;

x.  Failing to have appropriate policies and procedures with regard to hiring its drivers;

y.  Failing to follow the written and/or unwritten policies and procedures with regard to the hiring of its drivers;

z.  Failing to have appropriate policies and procedures with regard to the monitoring of its drivers;

aa. Failing to follow the written and/or unwritten policies and procedures with regard to the monitoring of its drivers;

bb. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

cc. Violating all applicable provisions of the FMCSA;

dd. Failing to suspend, discipline, or provide remedial training to Mr. Leksowski prior to the Crash despite his history of unsafe and reckless driving; and

ee. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Leksowski.

108.   As a result of the above-stated acts and omissions, Plaintiff suffered such harm as has been previously stated herein.

**WHEREFORE**, Plaintiff, Anderson Bastone, Administrator of the Estate of Chaz Bastone, hereby seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.

## COUNT VI

## NEGLIGENT ENTRUSTMENT

## ANDERSON BASTONE, AS THE ADMINISTRATOR OF THE ESTATE OF CHAZ BASTONE v. ALL DEFENDANTS

109.   The preceding paragraphs are incorporated herein as though fully set forth below.

110.   Defendants had a duty to use due care in choosing a careful and competent driver.

111.   Defendants entrusted the Volvo and the Wabash to Mr. Leksowski despite the fact that Mr. Leksowski failed to possess the knowledge, skill, experience, available equipment and personal characteristics to operate a tractor trailer.

112.   Defendants knew or should have known that Mr. Leksowski failed to possess the knowledge, skill, experience, available equipment and personal characteristics to transport freight and/or goods without creating an unreasonable risk to operate a tractor trailer without creating an unreasonable risk of injury to others.

113.   Because Defendants entrusted the Volvo and Wabash to an incompetent driver, Defendants are liable for any negligent and/or reckless conduct of Mr. Leksowski.

114.   Defendants were negligent in entrusting the Volvo and Wabash to Mr. Leksowski, when it knew or should have known with the exercise of reasonable due care that Mr. Leksowski lacked the necessary skill, judgment, and/or prudence with which to operate the Volvo and Wabash.

115.   Defendants were negligent and/or reckless in entrusting the Volvo and Wabash to Mr. Leksowski, when they knew or should have known with the exercise of reasonable care that Mr. Leksowski had a propensity to cause motor vehicle collisions.

116.   Defendants were negligent in entrusting the Volvo and Wabash to Mr. Leksowski, when it knew or should have known with the exercise of reasonable care that Mr. Leksowski had a propensity to violate the motor vehicle code.

117.   Golf Transportation, JP Logistics, UNFI, UNFI Transport, and/or Coyote were likewise negligent in entrusting OConnor to ship its freight when it knew or should have known that OConnor has a propensity for engaging in unsafe practices and hiring dangerous and poorly trained drivers such as Mr. Leksowski.

118.   Defendants Golf Transportation, JP Logistics, UNFI, UNFI Transport, and/or Coyote knew or should have known that Defendant OConnor had an unsafe history in performing services as a motor carrier including, but not limited to:

      a.  Failing to retain supporting documents in direct violation of FMCSA regulation 395.11 (c);

b. Failing to maintain inquiries into driver's driving record in driver's qualification file in direct violation of FMCSA regulation 391.51(b)(2);

c. Consciously choosing to make fraudulent entries on annual periodic inspection form in direct violation of FMCSA regulation 390.35;

d. Driving a commercial motor vehicle at an excessive rate of speed 6-10 miles over the posted speed limit in violation of FMCSA regulation 392.2 SLLS2;

e. Driving a commercial motor vehicle that is equipped with inoperative brake lamps in violation of FMCSA regulation 393.9;

f. Driving a commercial motor vehicle that is not equipped with operative turn signals in violation of FMCSA regulation 393.9;

g. Driving a commercial motor vehicle that is not equipped with operative hub caps in violation of FMCSA regulation 396.3A1;

h. Allowing a commercial motor vehicle to be operated with defective lighting devices or reflective material in violation of FMCSA regulation 393.11;

i. Allowing a commercial motor vehicle to be operated with tire tread or sidewall separation in violation of FMCSA 393.75;

j. Allowing a commercial motor vehicle to be operated with tire tread depth less than 2/32 of an inch in violation of FMCSA regulation 393.75;

k. Allowing a commercial motor vehicle to be operated without proof of inspection in violation of FMCSA regulation 396.17;

l. Allowing a commercial motor vehicle to be operated with clamp or roto brake out of adjustment in violation of FMCSA 393.47(e);

m. Allowing a commercial motor vehicle equipped with an air brake system to be operated without meeting the brake adjustment

requirements outlined in the FMCSA in violation of FMCSA
regulation 393.53(b);

n.  Allowing a commercial motor vehicle to be operated on the
roadway without proper required lamps in violation of FMCSA
regulation 393.9;

o.  Allowing a commercial motor vehicle to be operated on the
roadways without required warning devices in violation of
FMCSA regulation 393.95(f);

p.  Allowing a commercial motor vehicle to be operated on the
roadway without operable leaf springs in violation of FMCSA
regulation 393.207(c);

q.  Allowing a commercial motor vehicle to be operated on the
roadway without operable axle positioning in violation of FMCSA
regulation 393.207(a);

r.  Allowing a commercial motor vehicle to be operated on the
roadway without proper brake hoses and tubing in violation of
FMCSA regulation 393.45;

s.  Allowing a commercial motor vehicle to be operated on the
roadway with defective brakes in violation of FMCSA regulation
393.48(a);

t.  Allowing a commercial motor vehicle to operated on the roadways
with a driver whose duty status is not current in violation of
FMCSA regulation 395.8(f);

u.  Failing to have a driver retain previous seven (7) days of records
pertaining to duty status in violation of FMCSA regulation
395.8(k);

v.  Failing to equip commercial motor vehicle with electronic logging
devices that transfers data electronically in violation of FMCSA
regulation 395.24(d);

w. Failing to manually add shipping document in violation of FMCSA regulation 395.24(c)(2);

x. Allowing a driver to operate a commercial motor vehicle without being able to read or speak the English language in violation of FMCSA regulation 391.11(b)(2);

y. Allowing a commercial motor vehicle to be operated on the roadway while the electronic logging device cannot be viewed from outside the vehicle in violation of FMCSA regulation 395.20(b);

z. Allowing a commercial motor vehicle to be operated on the roadway without proper mounting of the electronic logging device in violation of FMCSA regulation 395.22(g);

aa. Allowing a commercial motor vehicle and driver on the roadway without proper record of duty status in violation of FMCSA regulation 395.8(a)

bb. Driving a commercial motor vehicle at an excessive rate of speed while traveling through a construction zone in violation of FMCSA regulation 392.2SLLSWZ; and

cc. Making an improper turn while operating a commercial motor vehicle in violation of FMCSA regulation 392.2T.

119.   Defendants JP Logistics, OConnor, UNFI, UNFI Transport, and/or Coyote knew or should have known that Defendant Golf Transport had an unsafe history in performing services as a motor carrier including, but not limited to:

a. Failing to retain supporting documents in direct violation of FMCSA regulation 395.11 (c);

b. Driving a commercial motor vehicle at an excessive rate of speed in a construction zone in violation of FMCSA regulation 392.2 SLLSWZ;

c.  Allowing a commercial motor vehicle to operated overweight in violation of FMCSA regulation 392.2;

d.  Allowing a commercial motor vehicle to be operated in a restricted lane in violation of FMCSA regulation 392.2LV;

e.  Allowing a commercial motor vehicle and driver on the roadway without proper record of duty status in violation of FMCSA regulation 395.8;

f.  Allowing a commercial motor vehicle and driver on the roadway without any record of duty status in violation of FMCSA regulation 395.8(a);

g.  Allowing a commercial motor vehicle and driver on the roadway without an up to date and current duty status record in violation of FMCSA regulation 395.8(f);

h.  Allowing a commercial motor vehicle and driver on the roadway without a record duty status in violation of FMCSA regulation 395.8(a);

i.  Allowing a commercial motor vehicle to be operated on the roadway without proof of inspection in violation of FMCSA regulation 396.17(c);

j.  Allowing a commercial motor vehicle to be operated without proper registration and/or license plate in violation of FMCSA regulation 392.2RG;

k.  Allowing a commercial motor vehicle to be operated on the roadway with inoperable required lamps in violation of FMCSA regulation 393.9; and

l.  Allowing a commercial motor vehicle to operate on the roadway with known grease and oil leaks in violation of FMCSA regulation 396.5(b).

120. At all relevant times, Defendants had a duty to ensure that it had appropriate hiring practices that put competent drivers behind the wheel.

121. At all relevant times, Defendants had a duty to ensure that it had appropriate policies in place to ensure that its drivers did not violate FMCSA regulations.

122. Defendants knew or in the exercise of reasonable care should have known that entrusting the Volvo and Wabash to Mr. Leksowski would likely cause harm to the motoring public such as the harm that was caused on October 7, 2020 to Chaz Bastone.

123. Defendants had a duty to entrust the Volvo and Wabash to an attentive and skilled driver.

124. Defendants failed to ensure that it hired and retained attentive skilled drivers.

125. Defendants had a duty to entrust the Volvo and Wabash to drivers who operate their vehicles in a safe manner.

126. By entrusting the Volvo and Wabash to Mr. Leksowski, Defendants acted in conscious disregard to the rights and safety of Chaz Bastone.

127. As a result of the above-stated acts and omissions, Plaintiff's Decedent suffered catastrophic and fatal injuries as has been previously stated herein.

**WHEREFORE**, Plaintiff, Anderson Bastone, Administrator of the Estate of Chaz Bastone, hereby seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.

<u>**COUNT VII**</u>

<u>**NEGLIGENT UNDERTAKING**</u>

<u>**ANDERSON BASTONE, AS THE ADMINISTRATOR OF THE ESTATE OF CHAZ BASTONE v. UNITED NATURAL FOODS, INC. AND UNFI TRANSPORT LLC**</u>

128.   The preceding paragraphs are incorporated herein as though fully set forth below.

129.   UNFI and UNFI Transport are subject to liability for the physical harm caused to third persons for its failure to exercise reasonable care to protect its undertakings.

130.   UNFI and UNFI Transport had a contractual obligation to efficiently and safely transport the subject load on October 7, 2020.

131.   UNFI and UNFI Transport undertook, for consideration, a duty to render these services to Defendants.

132.   UNFI and UNFI Transport assumed an obligation to render safe transportation services to Defendants.

133.   UNFI and UNFI Transport owed a duty of care to the general motoring public, including the Decedent.

134.   UNFI and UNFI Transport failed to exercise reasonable care and increased the risk of harm in failing to adequately and properly maintain the Volvo and Wabash operated by Mr. Leksowski.

135.   UNFI and UNFI Transport made the conscious choice to hire Golf Transport, OConnor and Mr. Leksowski, a driver with a history of unsafe driving violations thereby increasing the risk of harm to the general motoring public.

136.   Golf Transport and OConnor are regulated by the FMCSA regulations which are specifically designed to prevent crashes and fatalities and keep the general motoring public and other third parties safe from harm. See FMCSA Section 383.1(a).

137.   UNFI and UNFI Transport through Golf Transport and OConnor undertook the duty to transport the subject load for compensation and consciously chose to violate the FMCSA by utilizing a driver with a known propensity of unsafe driving violations.

138.   UNFI and UNFI Transport failed to exercise reasonable care in complying with the FMCSA when hiring Golf Transport and OConnor, thereby increasing the risk of harm to the motoring public that a future crash will occur.

See Predicting Truck Crash Involvement: 2018 Update prepared by the American

Transportation Research Institute attached hereto as Exhibit A.

139.   Based on the Study, the unsafe violation history of Golf Transport

increased the risk of harm that a crash would occur by the following percentages:

    a.   Allowing a commercial motor vehicle to operated overweight in
violation of FMCSA regulation 392.2 – January of 2020 (20%);

    b.   Allowing a commercial motor vehicle to be operated in a restricted
lane in violation of FMCSA regulation 392.2LV – January of 2020
(35%);

    c.   Allowing a commercial motor vehicle and driver on the roadway
without proper record of duty status in violation of FMCSA
regulation 395.8 – January of 2020 (29%);

    d.   Allowing a commercial motor vehicle and driver on the roadway
without any record of duty status in violation of FMCSA
regulation 395.8(a) – January of 2020 (45%);

    e.   Allowing a commercial motor vehicle and driver on the roadway
without a record duty status in violation of FMCSA regulation
395.8(a) – January of 2020 (45%);

    f.   Allowing a commercial motor vehicle to be operated on the
roadway without proof of inspection in violation of FMCSA
regulation 396.17(c) – January of 2020 (29%);

    g.   Driving a commercial motor vehicle at an excessive rate of speed
in a construction zone in violation of FMCSA regulation 392.2
SLLSWZ – January of 2020 (45%);

    h.   Allowing a commercial motor vehicle to be operated without
proper registration and/or license plate in violation of FMCSA
regulation 392.2RG – January of 2020 (29%);

i.   Allowing a commercial motor vehicle to operate on the roadway with known grease and oil leaks in violation of FMCSA regulation 396.5(b) – January of 2020.

j.   Allowing a commercial motor vehicle to be operated on the roadway without proof of inspection in violation of FMCSA regulation 396.17(c) – March of 2020 (29%);

k.   Allowing a commercial motor vehicle to be operated on the roadway without proof of inspection in violation of FMCSA regulation 396.17(c) – May of 2020 (29%);

l.   Allowing a commercial motor vehicle to be operated without proper registration and/or license plate in violation of FMCSA regulation 392.2RG – September of 2020 (29%);

m.   Allowing a commercial motor vehicle to be operated on the roadway with inoperable required lamps in violation of FMCSA regulation 393.9 – July of 2021;

n.   Allowing a commercial motor vehicle and driver on the roadway without an up to date and current duty status record in violation of FMCSA regulation 395.8(f) – July of 2021 (45%);

o.   Allowing a commercial motor vehicle to be operated on the roadway with inoperable required lamps in violation of FMCSA regulation 393.9 – October of 2021; and

p.   Allowing a commercial motor vehicle to be operated on the roadway without proof of inspection in violation of FMCSA regulation 396.17(c) – October of 2021 (29%).

140.   Based on the Study, the unsafe violation history of OConnor increased the risk of harm that a crash would occur by the following percentages:

a.   Allowing a commercial motor vehicle to be operated without proof of inspection in violation of FMCSA regulation 396.17 – September of 2019 (29%);

b. Allowing a commercial motor vehicle and driver to speed 6-10 miles per hour over the posted speed limit in violation of FMCSA regulation 392.2-SLLS2 – September of 2019 (38%);

c. Allowing a commercial motor vehicle and driver on the roadway without proper record of duty status in violation of FMCSA regulation 395.8(a) – September of 2019 (44%);

d. Allowing a commercial motor vehicle to operated on the roadways with a driver whose duty status is not current in violation of FMCSA regulation 395.8(f) – September of 2019 (44%);

e. Failing to have a driver retain previous seven (7) days of records pertaining to duty status in violation of FMCSA regulation 395.8(k) – September of 2019 (45%);

f. Allowing a commercial motor vehicle to be operated without proof of inspection in violation of FMCSA regulation 396.17 – November of 2019 (29%);

g. Allowing a commercial motor vehicle to be operated with defective lighting devices or reflective material in violation of FMCSA regulation 393.11 – November of 2019;

h. Failing to equip commercial motor vehicle with electronic logging devices that transfers data electronically in violation of FMCSA regulation 395.24(d) – January of 2020 (45%);

i. Allowing a driver of a commercial vehicle to fail to manually add a shipping document number in violation of FMCSA regulation 395.24(c)(2) – February of 2020 (45%);

j. Allowing a commercial motor vehicle to be operated with clamp or roto brake out of adjustment in violation of FMCSA 393.47(e) – May of 2020;

k. Allowing a commercial motor vehicle equipped with an air brake system to be operated without meeting the brake adjustment requirements outlined in the FMCSA in violation of FMCSA regulation 393.53(b) – May of 2020;

l.  Allowing a commercial motor vehicle to be operated on the roadway without proper required lamps in violation of FMCSA regulation 393.9 – May of 2020;

m.  Allowing a driver to operate a commercial motor vehicle without being able to read or speak the English language in violation of FMCSA regulation 391.11(b)(2) – May of 2020 (44%);

n.  Allowing a commercial motor vehicle to be operated without proper registration or license plate in violation of FMCSA regulation 392.2 – May of 2020;

o.  Allowing a commercial motor vehicle to be operated with inoperable lamps in violation of FMCSA regulation 393.3 – May of 2020;

p.  Allowing a commercial motor vehicle to be operated on the roadway while the electronic logging device cannot be viewed from outside the vehicle in violation of FMCSA regulation 395.20(b) – June of 2020 (45%);

q.  Allowing a commercial motor vehicle to be operated on the roadway without proper mounting of the electronic logging device in violation of FMCSA regulation 395.22(g) – June of 2020 (45%);

r.  Allowing a commercial motor vehicle and driver on the roadway without proper record of duty status in violation of FMCSA regulation 395.8(a) – June of 2020 (44%);

s.  Driving a commercial motor vehicle at an excessive rate of speed while traveling through a construction zone in violation of FMCSA regulation 392.2SLLSWZ – June of 2020 (45%);

t.  Allowing a commercial motor vehicle to be operated with tire tread or sidewall separation in violation of FMCSA 393.75 – July of 2020;

u.  Allowing a commercial motor vehicle to be operated with tire tread depth less than 2/32 of an inch in violation of FMCSA regulation 393.75 – July of 2020;

v.  Allowing a commercial motor vehicle to be operated without proof of inspection in violation of FMCSA regulation 396.17 – July of 2020;

w.  Allowing a commercial motor vehicle to be operated on the roadways without required warning devices in violation of FMCSA regulation 393.95(f) – July of 2020;

x.  Allowing a commercial motor vehicle to be operated on the roadway without operable leaf springs in violation of FMCSA regulation 393.207(c) – July of 2020;

y.  Allowing a commercial motor vehicle to be operated on the roadway without operable axle positioning in violation of FMCSA regulation 393.207(a) – July of 2020;

z.  Allowing a commercial motor vehicle to be operated without proof of inspection in violation of FMCSA regulation 396.17 – July of 2020 (29%);

aa. Allowing a commercial motor vehicle to be operated on the roadway without proper brake hoses and tubing in violation of FMCSA regulation 393.45 – September of 2020;

bb. Allowing a commercial motor vehicle to be operated with clamp or roto brake out of adjustment in violation of FMCSA 393.47(e) – September of 2020;

cc. Allowing a commercial motor vehicle equipped with an air brake system to be operated without meeting the brake adjustment requirements outlined in the FMCSA in violation of FMCSA regulation 393.53(b) – September of 2020;

dd. Driving a commercial motor vehicle that is equipped with inoperative brake lamps in violation of FMCSA regulation 393.9 – October of 2020;

49

ee. Driving a commercial motor vehicle that is not equipped with operative turn signals in violation of FMCSA regulation 393.9 – October of 2020;

ff. Driving a commercial motor vehicle that is not equipped with operative hub caps in violation of FMCSA regulation 396.3A1 – October of 2020;

gg. Allowing a commercial motor vehicle to be operated on the roadway with defective brakes in violation of FMCSA regulation 393.48(a) – October of 2020;

hh. Allowing a commercial motor vehicle to be operated on the roadway with defective and/or missing axle positioning parts in violation of FMCSA regulation 393.207(a) – October of 2020;

ii. Allowing a commercial motor vehicle to be operated on the roadway with defective and/or missing axle positioning parts in violation of FMCSA regulation 393.207(a) – October of 2020;

jj. Allowing a commercial motor vehicle to be operated with inadequate brake hoses and tubing in violation of FMCSA regulation 393.45 – October of 2020;

kk. Allowing a commercial motor vehicle to be operated on the road with inoperative brake lamps in violation of FMCSA regulation 393.9(b) – October of 2020;

ll.  Allowing a commercial motor vehicle to be operated on the road with inoperative head lamps in violation of FMCSA regulation 393.9 – October of 2020;

mm.  Allowing a commercial motor vehicle to be operated on the road with inoperative turn signal in violation of FMCSA regulation 393.9 – October of 2020;

nn. Driving a commercial motor vehicle that is equipped with inoperative brake lamps in violation of FMCSA regulation 393.9 – December of 2020;

oo. Driving a commercial motor vehicle that is not equipped with operative turn signals in violation of FMCSA regulation 393.9 – December of 2020;

pp. Making an improper turn while operating a commercial motor vehicle in violation of FMCSA regulation 392.2T – December of 2020 (49%);

qq. Allowing a commercial motor vehicle to operated on the roadways with a driver whose duty status is not current in violation of FMCSA regulation 395.8(f) – December of 2020 (44%); and

rr. Allowing a commercial motor vehicle and driver to speed 15 or more miles per hour over the posted limit in violation of FMCSA regulation 392.2-SLLS4 – June of 2021 – (40%).

141.   By virtue of employing Golf Transport and OConnor, UNFI and UNFI Transport increased the risk of harm to the general motoring public by 1,142%.

142.   Additionally, UNFI and UNFI Transport undertook the performance of said duties and was negligent in its undertaking in the following ways:

a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Mr. Leksowski;

b. Failing to train and/or properly train Mr. Leksowski prior to allowing him to operate its Volvo;

c. Hiring and/or continuing to employ Mr. Leksowski despite the fact that it knew or should have known that his violation of the FMCSA hours of service made him unfit to safely operate a commercial vehicle;

d. Hiring and/or continuing to employ Mr. Leksowski despite the fact that he had a propensity for driving violations;

e.  Hiring and/or continuing to employ Mr. Leksowski despite the fact that he had a propensity for violating the "Rules of the Road" and FMCSR

f.  Failing to do preventable analysis as recommended by the FMSCR;

g.  Failing to have an appropriate disciplinary policy within the company;

h.  Hiring and/or continuing to employ Mr. Leksowski despite the fact that it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i.  Permitting Mr. Leksowski to operate its Volvo when it knew or should have known that he was not properly qualified and/or trained;

j.  Allowing Mr. Leksowski to operate tractor trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r. Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s. Failing to monitor and/or regulate the actions of its drivers;

t. Failing to monitor and/or regulate the hours of its drivers;

u. Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v. Failing to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, failing to use it appropriately;

w. Failing to have policy and mechanisms in place to address cumulative fatigue in its drivers;

x. Placing more emphasis on profits than on safety of its drivers and the motoring public;

y. Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z. Failing to act upon and remedy violations of FMCSA regulation 383;

aa. Failing to act upon and remedy violations of FMCSA regulation 395;

bb. Failing to act upon and remedy violations of FMCSA regulation 396.7;

cc. Failing to act upon and remedy violations of FMCSA regulation 396.9;

dd. Failing to act upon and remedy violations of FMCSA regulation 396.11;

ee. Failing to act upon and remedy violations of FMCSA regulation 396.13;

ff. Failing to act upon and remedy violations of FMCSA regulation 396.17;

gg. Failing to act upon and remedy known violations of industry standards;

hh. Acting in a conscious disregard for the rights and safety of Plaintiffs;

ii. Failing to have appropriate policies and procedures with regard to hiring of drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

kk. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

ll. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

mm. Consciously disregarding federal and state law regarding responsibilities of motor carriers and the operation of commercial vehicles;

nn. Violating all applicable provisions of the FMCSA;

oo. Failing to suspend, discipline, or provide remedial training to Mr. Leksowksi prior to the Crash despite his history of unsafe driving practices; and

pp. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Leksowski.

143.   As a result of the above-stated acts and omissions, Plaintiff has suffered such harm as has been previously stated herein.

**WHEREFORE**, Plaintiff, Anderson Bastone, Administrator of the Estate of Chaz Bastone, hereby seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.

## COUNT VIII

## NEGLIGENT UNDERTAKING

## ANDERSON BASTONE, AS THE ADMINISTRATOR OF THE ESTATE OF CHAZ BASTONE v. GOLF TRANSPORTATION, INC.

144.   The preceding paragraph are incorporated herein as though fully set forth below.

145.   Golf Transport is subject to liability for the physical harm caused to third persons for its failure to exercise reasonable care to protect its undertakings.

146.    Golf Transport had a contractual obligation to efficiently and safely transport the subject load on October 7, 2020.

147.    Golf Transport undertook, for consideration, a duty to render these services to Defendants.

148.    Golf Transport assumed an obligation to render safe transportation services to Defendants.

149.    Golf Transport owed a duty of care to the general motoring public, including the Decedent.

150.    Golf Transport failed to exercise reasonable care and increased the risk of harm in failing to adequately and properly maintain the Volvo and Wabash operated by Mr. Leksowski.

151.    Golf Transport made the conscious choice to hire OConnor and Mr. Leksowski, a driver with a history of unsafe driving violations thereby increasing the risk of harm to the general motoring public.

152.    OConnor is regulated by the FMCSA regulations which are specifically designed to prevent crashes and fatalities and keep the general motoring public and other third parties safe from harm. See FMCSA Section 383.1(a).

153.   OConnor undertook the duty to transport the subject load for compensation and consciously chose to violate the FMCSA by utilizing a driver with a known propensity of unsafe driving violations.

154.   Golf Transport failed to exercise reasonable care in complying with the FMCSA when hiring OConnor, thereby increasing the risk of harm to the motoring public that a future crash will occur. See Exhibit A.

155.   Based on the Study, the unsafe violation history of OConnor increased the risk of harm that a crash would occur by the following percentages:

    a.   Allowing a commercial motor vehicle to be operated without proof of inspection in violation of FMCSA regulation 396.17 – September of 2019 (29%);

    b.   Allowing a commercial motor vehicle and driver to speed 6-10 miles per hour over the posted speed limit in violation of FMCSA regulation 392.2-SLLS2 – September of 2019 (38%);

    c.   Allowing a commercial motor vehicle and driver on the roadway without proper record of duty status in violation of FMCSA regulation 395.8(a) – September of 2019 (44%);

    d.   Allowing a commercial motor vehicle to operated on the roadways with a driver whose duty status is not current in violation of FMCSA regulation 395.8(f) – September of 2019 (44%);

    e.   Failing to have a driver retain previous seven (7) days of records pertaining to duty status in violation of FMCSA regulation 395.8(k) – September of 2019 (45%);

    f.   Allowing a commercial motor vehicle to be operated without proof of inspection in violation of FMCSA regulation 396.17 – November of 2019 (29%);

g.  Allowing a commercial motor vehicle to be operated with defective lighting devices or reflective material in violation of FMCSA regulation 393.11 – November of 2019;

h.  Failing to equip commercial motor vehicle with electronic logging devices that transfers data electronically in violation of FMCSA regulation 395.24(d) – January of 2020 (45%);

i.  Allowing a driver of a commercial vehicle to fail to manually add a shipping document number in violation of FMCSA regulation 395.24(c)(2) – February of 2020 (45%);

j.  Allowing a commercial motor vehicle to be operated with clamp or roto brake out of adjustment in violation of FMCSA 393.47(e) – May of 2020;

k.  Allowing a commercial motor vehicle equipped with an air brake system to be operated without meeting the brake adjustment requirements outlined in the FMCSA in violation of FMCSA regulation 393.53(b) – May of 2020;

l.  Allowing a commercial motor vehicle to be operated on the roadway without proper required lamps in violation of FMCSA regulation 393.9 – May of 2020;

m.  Allowing a driver to operate a commercial motor vehicle without being able to read or speak the English language in violation of FMCSA regulation 391.11(b)(2) – May of 2020 (44%);

n.  Allowing a commercial motor vehicle to be operated without proper registration or license plate in violation of FMCSA regulation 392.2 – May of 2020;

o.  Allowing a commercial motor vehicle to be operated with inoperable lamps in violation of FMCSA regulation 393.3 – May of 2020;

p.  Allowing a commercial motor vehicle to be operated on the roadway while the electronic logging device cannot be viewed

from outside the vehicle in violation of FMCSA regulation 395.20(b) – June of 2020 (45%);

q.  Allowing a commercial motor vehicle to be operated on the roadway without proper mounting of the electronic logging device in violation of FMCSA regulation 395.22(g) – June of 2020 (45%);

r.  Allowing a commercial motor vehicle and driver on the roadway without proper record of duty status in violation of FMCSA regulation 395.8(a) – June of 2020 (44%);

s.  Driving a commercial motor vehicle at an excessive rate of speed while traveling through a construction zone in violation of FMCSA regulation 392.2SLLSWZ – June of 2020 (45%);

t.  Allowing a commercial motor vehicle to be operated with tire tread or sidewall separation in violation of FMCSA 393.75 – July of 2020;

u.  Allowing a commercial motor vehicle to be operated with tire tread depth less than 2/32 of an inch in violation of FMCSA regulation 393.75 – July of 2020;

v.  Allowing a commercial motor vehicle to be operated without proof of inspection in violation of FMCSA regulation 396.17 – July of 2020;

w.  Allowing a commercial motor vehicle to be operated on the roadways without required warning devices in violation of FMCSA regulation 393.95(f) – July of 2020;

x.  Allowing a commercial motor vehicle to be operated on the roadway without operable leaf springs in violation of FMCSA regulation 393.207(c) – July of 2020;

y.  Allowing a commercial motor vehicle to be operated on the roadway without operable axle positioning in violation of FMCSA regulation 393.207(a) – July of 2020;

z.  Allowing a commercial motor vehicle to be operated without proof of inspection in violation of FMCSA regulation 396.17 – July of 2020 (29%);

aa. Allowing a commercial motor vehicle to be operated on the roadway without proper brake hoses and tubing in violation of FMCSA regulation 393.45 – September of 2020;

bb. Allowing a commercial motor vehicle to be operated with clamp or roto brake out of adjustment in violation of FMCSA 393.47(e) – September of 2020;

cc. Allowing a commercial motor vehicle equipped with an air brake system to be operated without meeting the brake adjustment requirements outlined in the FMCSA in violation of FMCSA regulation 393.53(b) – September of 2020;

dd. Driving a commercial motor vehicle that is equipped with inoperative brake lamps in violation of FMCSA regulation 393.9 – October of 2020;

ee. Driving a commercial motor vehicle that is not equipped with operative turn signals in violation of FMCSA regulation 393.9 – October of 2020;

ff. Driving a commercial motor vehicle that is not equipped with operative hub caps in violation of FMCSA regulation 396.3A1 – October of 2020;

gg. Allowing a commercial motor vehicle to be operated on the roadway with defective brakes in violation of FMCSA regulation 393.48(a) – October of 2020;

hh. Allowing a commercial motor vehicle to be operated on the roadway with defective and/or missing axle positioning parts in violation of FMCSA regulation 393.207(a) – October of 2020;

ii. Allowing a commercial motor vehicle to be operated on the roadway with defective and/or missing axle positioning parts in violation of FMCSA regulation 393.207(a) – October of 2020;

jj. Allowing a commercial motor vehicle to be operated with inadequate brake hoses and tubing in violation of FMCSA regulation 393.45 – October of 2020;

kk. Allowing a commercial motor vehicle to be operated on the road with inoperative brake lamps in violation of FMCSA regulation 393.9(b) – October of 2020;

ll. Allowing a commercial motor vehicle to be operated on the road with inoperative head lamps in violation of FMCSA regulation 393.9 – October of 2020;

mm. Allowing a commercial motor vehicle to be operated on the road with inoperative turn signal in violation of FMCSA regulation 393.9 – October of 2020;

nn. Driving a commercial motor vehicle that is equipped with inoperative brake lamps in violation of FMCSA regulation 393.9 – December of 2020;

oo. Driving a commercial motor vehicle that is not equipped with operative turn signals in violation of FMCSA regulation 393.9 – December of 2020;

pp. Making an improper turn while operating a commercial motor vehicle in violation of FMCSA regulation 392.2T – December of 2020 (49%);

qq. Allowing a commercial motor vehicle to operated on the roadways with a driver whose duty status is not current in violation of FMCSA regulation 395.8(f) – December of 2020 (44%); and

rr. Allowing a commercial motor vehicle and driver to speed 15 or more miles per hour over the posted limit in violation of FMCSA regulation 392.2-SLLS4 – June of 2021 – (40%).

156.  By virtue of employing OConnor Transport, Golf increased the risk of

harm to the general motoring public by 704%.

157.   Additionally, Golf Transport undertook the performance of said duties and was negligent in its undertaking in the following ways:

    a.  Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Mr. Leksowski;

    b.  Failing to train and/or properly train Mr. Leksowski prior to allowing him to operate its Volvo;

    c.  Hiring and/or continuing to employ Mr. Leksowski despite the fact that it knew or should have known that his violation of the FMCSA hours of service made him unfit to safely operate a commercial vehicle;

    d.  Hiring and/or continuing to employ Mr. Leksowski despite the fact that he had a propensity for driving violations;

    e.  Hiring and/or continuing to employ Mr. Leksowski despite the fact that he had a propensity for violating the "Rules of the Road" and FMCSR

    f.  Failing to do preventable analysis as recommended by the FMSCR;

    g.  Failing to have an appropriate disciplinary policy within the company;

    h.  Hiring and/or continuing to employ Mr. Leksowski despite the fact that it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

    i.  Permitting Mr. Leksowski to operate its Volvo when it knew or should have known that he was not properly qualified and/or trained;

    j.  Allowing Mr. Leksowski to operate tractor trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, failing to use it appropriately;

w.  Failing to have policy and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383;

aa. Failing to act upon and remedy violations of FMCSA regulation 395;

bb. Failing to act upon and remedy violations of FMCSA regulation 396.7;

cc. Failing to act upon and remedy violations of FMCSA regulation 396.9;

dd. Failing to act upon and remedy violations of FMCSA regulation 396.11;

ee. Failing to act upon and remedy violations of FMCSA regulation 396.13;

ff. Failing to act upon and remedy violations of FMCSA regulation 396.17;

gg. Failing to act upon and remedy known violations of industry standards;

hh. Acting in a conscious disregard for the rights and safety of Plaintiffs;

ii. Failing to have appropriate policies and procedures with regard to hiring of drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

kk. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

ll. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

mm. Consciously disregarding federal and state law regarding responsibilities of motor carriers and the operation of commercial vehicles;

nn. Violating all applicable provisions of the FMCSA;

oo. Failing to suspend, discipline, or provide remedial training to Mr. Leksowksi prior to the Crash despite his history of unsafe driving practices; and

pp. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Leksowski.

158.   As a result of the above-stated acts and omissions, Plaintiff has suffered such harm as has been previously stated herein.

**WHEREFORE**, Plaintiff, Anderson Bastone, Administrator of the Estate of Chaz Bastone, hereby seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.

## COUNT IX

## JOINT VENTURE

## ANDERSON BASTONE, AS THE ADMINISTRATOR OF THE ESTATE OF CHAZ BASTONE v. ALL DEFENDANTS

159.   The preceding paragraphs are incorporated herein as though fully set forth below.

160.   On the above referenced date, place and time, Defendants Golf Transportation, OConnor, JP Logistics, UNFI, UNFI Transport, and Coyote were engaged in a joint venture to haul goods for profit.

161.   Upon information and belief, Golf Transportation, OConnor, JP Logistics, and Coyote and its fleet of commercial motor vehicles was either subsumed by UNFI and UNFI Transport to haul its goods through interstate commerce and/or provided substantial financial assistance/investment to Golf Transportation, OConnor, JP Logistics, and Coyote such that their fleet of commercial motor vehicles became the commercial motor vehicle fleet of UNFI and UNFI Transport.

162.   Specifically, at all times material hereto, Defendants entered into a continuing business transaction in which they consolidated all entities and entered into one single entity operating as a joint venture providing full service freight transportation, freight storage, and freight logistics brokering, operating and

utilizing a fleet of semi-trucks, trailers, warehouses, and facilities.  The Defendants combined their resources, officers, personnel and/or efforts and agreed to undertake a common interest in the delivery of services in the commercial trucking industry providing freight transportation of goods and broker logistics in interstate commerce.

163.   Defendants Golf Transportation, OConnor, JP Logistics, UNFI, UNFI Transport, and Coyote each made a contribution of capital, materials, services or knowledge with respect to the load being transported at the time of the crash.

164.   Defendants Golf Transportation, OConnor, JP Logistics, UNFI, UNFI Transport, and Coyote shared in all profits that were generated as a result of the aforesaid joint venture.

165.   Upon and information and belief, Mr. Leksowksi was paid by all Defendants for this transportation, including allowances for fuel costs.

166.   Upon information and belief, Defendants are in contact through numerous means of communication, including, but not limited to, email, faxes, telephone, and mobile application to track status of shipment from origin to delivery.

167.   As a result of the transportation, Defendants earned, or intended to earn, a profit.

168.   On the above referenced date, place and time, Defendants controlled the Volvo through its duly authorized agent, servant, and/or employee, Mr. Leksowski.

169.   On the above referenced date, place and time, Mr. Leksowski was performing a service for the benefit of Defendants, namely the transportation of goods and material for profit.

170.   Defendants were aware that Mr. Leksowski was transporting the goods and materials.

171.   Defendants had the right to control Mr. Leksowski in performing this service.

172.   Defendants exercised this control over Mr. Leksowski, inter alia, in the manner described fully herein.

173.   Defendants held out Mr. Leksowski as an agent, servant, and/or employee such that a reasonable person would conclude that Mr. Leksowski was an agent, servant, and/or employee of Defendants and it is vicariously liable for the acts and/or omissions of Mr. Leksowski.

174.   As a direct and proximate cause of the above stated acts and omissions, Plaintiff's Decedents suffered, inter alia, the serious, severe, permanent, and fatal injuries as has been previously stated herein.

175.   The insurance for Golf Transportation, OConnor, JP Logistics, and Coyote was either paid in part or in full by UNFI and/or UNFI Transport.

176.   As a direct and proximate cause of the above stated acts and omissions, Plaintiff suffered the serious, severe, and permanent injuries stated herein.

**WHEREFORE**, Plaintiff, Anderson Bastone, Administrator of the Estate of Chaz Bastone, hereby seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.

Respectfully submitted:

**FELLERMAN & CIARIMBOLI LAW, P.C.**

BY: _____
       Edward J. Ciarimboli, Esquire
       Michael J. O'Neill, Esquire
       Corey S. Suda, Esquire
       Fellerman & Ciarimboli Law, P.C.
       183 Market Street, Suite 200
       Kingston, PA 18704
       570-718-1444
       *Counsel for Plaintiff*

Date: June 1, 2022

**PIAZZA LAW GROUP**

Anthony J. Piazza, Jr., Esquire
Christopher A. Piazza, Esquire
Piazza Law Group
801 Boulevard Avenue
Dickson City, PA 18519
570-382-3143
*Counsel for Plaintiff*

Date: June 1, 2022